IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JEFFREY D. LEISER,

    Plaintiff,

  v.

DR. JOAN HANNULA, et al.,

    Defendants.

OPINION & ORDER

15-cv-328-slc

---

Pro se plaintiff Jeffrey Leiser has been permitted to proceed on claims under 42 U.S.C. § 1983, in which he contends that the defendants failed to respond to his requests for treatment for his spinal and testicle pain, in violation of the Eighth Amendment and Wisconsin state law. Leiser has filed a Motion for a Preliminary Injunction (dkt. 25), in which he seeks an order requiring the Wisconsin Department of Corrections ("DOC") to bring him to the University of Wisconsin-Madison hospital to be evaluated by a neurosurgeon. I requested briefing, and after reviewing the parties' submissions, I determined that a hearing was unnecessary because the parties do not dispute the material facts and Leiser had failed to submit sufficient facts to suggest that he is entitled to the relief he seeks. Accordingly, his motion will be denied.

## UNDISPUTED FACTS

During all relevant times, Leiser was held at the Stanley Correctional Institution ("SCI"), where he is currently incarcerated. He has been permitted to proceed against the following SCI employees: Dr. Joan Hannula, the head doctor; July Bentley, a nurse practitioner; Patty Scherreiks, Tracy Brunner and Ms. Thacker, nurses; Sandra DeMars, Christine McCall and Jeanie Ann Voeks, the current and prior health services unit ("HSU") managers; and Lon Becher, the nursing coordinator.

Leiser attached numerous medical records to his complaint. They show a history of chronic pain due to disc herniations. Leiser underwent a lumbar fusion surgery in 1996 and a revision surgery in 2002. A 2006 scan did not reveal any loosening or failure from those procedures. (Progress Notes, dkt. #1-2.) Leiser arrived at SCI on October 28, 2010, where he promptly submitted a health services request ("HSR"). Leiser reported that he had undergone spinal surgery in 2010, he still experienced "pinching" pain on the left side, and two herniated discs caused "spasms and shooting pain."

Between November 2010 and January of 2015, Leiser submitted a multitude of health service requests, and he received treatment as a result. In my March 10, 2016, order, I summarized Leiser's descriptions of his requests for treatment and the responses of HSU staff. For purposes of this motion, however, I need to focus on the actual evidence Leiser has submitted that would show he is entitled to immediate injunctive relief.

Leiser's primary evidence is his own statements about the pain he suffers. He repeatedly states that he suffers severe testicle, back and foot pain that affects his daily life and causes serious mental and emotional distress. Additionally, Leiser cites two medical records to establish the severity of his back condition: (1) a January 2010 MRI taken at Agnesian Health Care, which includes the statement: "At the T7-T8 level there is mild central disc herniation noted which does appear to impinge the right anterior aspect of the spinal cord . . . ." (Dkt. 25, Ex. B.); and (2) a November 26, 2013, MRI ordered by Dr. Hannula, which noted that the degenerative disk disease was "most significant at L4-L5 with a small posterior disk protrusion and annula fissure," "mild to moderate central spinal stenosis," "mild narrowing of the lateral recesses bilaterally," and "mild bilateral neural foraminal narrowing." (Dkt. #25, Ex. A.)

Finally, to establish that the defendants ignored his requests for treatment, Leiser references the following treatment requests and responses:

- May 28, 2011: Leiser was taken to HSU in a wheelchair due to severe lower lumbar and leg pain, and he was then sent to the emergency room. At the emergency room, he received a pain pill and was sent back to SCI with the recommendation that he "see a neurologist or neurosurgeon." (Dkt. 1-6.)

- August 14, 2013: Leiser was taken to a hospital to see a general surgeon. In a letter to Bentley, the doctor noted that the problem may be neurological but that he would defer to a spinal specialist. (Dkt. 1-5.)

- August 30, 2013: Leiser submitted a letter to Dr. Hannula asking for an MRI and to see a neurosurgeon. (Dkt. 34-1, Ex. C.) Dr. Hannula responded, on September 3, 2013, that an appointment would be made to discuss a surgical consultation. (Dkt. 34-1, Ex. D.)

- November 26, 2013: Leiser underwent an MRI ordered by Dr. Hannula. The MRI results noted that the degenerative disk disease was "most significant at L4-L5 with a small posterior disk protrusion and annula fissure," "mild to moderate central spinal stenosis," "mild narrowing of the lateral recesses bilaterally," and "mild bilateral neural foraminal narrowing." (Dkt. 1-4.)

- August 5, 2014: Leiser sent a letter to Dr. Hannula stating that if they were not going to send him to see a neurosurgeon, he wanted to have his testicle removed to stop the pain. (Dkt. 34-1, at 3.)

- August 28, 2014: Dr. Hannula saw Leiser and noted that Leiser wanted a neurosurgery evaluation. She also noted that she told Leiser that based on his MRI and clinical exam, he had no need for surgery. (Dkt. 34-1, Ex. G.)

- September 22, 2014: Leiser was seen by Dr. Stephen Endres, a doctor at Black River Memorial Hospital, who stated that "It is not uncommon to have disc pain radiate into the scrotum and in fact I told him numerous times in my practice I have seen hernia surgeries performed when actually the pain was coming from the back ..." (Dkt. 34-3, Ex. H.)

- December 1, 2014: Leiser submitted an HSR, in which he requested an appointment with a neurosurgeon. (Dkt. 34-1, Ex. H.)

- January 16, 2015: Leiser was seen by a nurse, and he told her that he really needs surgery. (Dkt. 34-1, Ex. I.)

In response, the defendants do not dispute the existence of these records. Instead, the contend that the facts Leiser points to do not establish that he is entitled to relief. Additionally, defendants have submitted a declaration from Dr. Hannula. In it, she supports her conclusions that Leiser does not need an evaluation by a neurosurgeon with her own treatment notes as well as those of other treatment providers:

- After Leiser's 2010 MRI, a UW Hospital neurosurgeon evaluated him and concluded that his thoracic disc did not need to be addressed at that time. (Hannula Decl., dkt. #29, ¶ 22, Ex. 103, at page 003.)

- Following Leiser's 2013 MRI, he did not exhibit clinical symptoms that would necessitate further evaluation or surgical intervention (*Id.* ¶ 23.)

- When Leiser filed his preliminary injunction motion in May of 2016, he had not submitted a written request that SCI staff refer him to the spine clinic. He had not made such a request in the prior 12 months. (*Id.* ¶ 11, Ex. 102.)

- From December 2014 to the present, Dr. Hannula has treated Leiser on 11 occasions. Lesier complained of back pain at only one of the appointments. (*Id.* ¶ 10, Ex. 101, page 008.)

- On April 25, 2016, Dr. Hannula evaluated Leiser before a scheduled fistulotomy. Leiser did not report back pain, and actually stated that he was walking two miles a day and that he had lost 22 pounds. (*Id.* ¶ 10, Ex. 101, at page 011.)

OPINION

"To obtain a preliminary injunction, the moving party must show that its case has 'some likelihood of success on the merits' and that it has 'no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied.'" *Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 678 (7th Cir. 2012) (quoting *Ezell v. City of Chi.*, 651 F.3d 684, 694 (7th Cir.

2011)). If the moving party satisfies these threshold requirements, then the court must balance the irreparable harm the moving party will suffer if relief is denied against the harm the non-moving party would suffer if preliminary relief is granted. *Id.* The court also must consider the "public interest in granting or denying an injunction." *Id.* This "sliding scale" approach "is not mathematical in nature; rather 'it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief.'" *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895-96 (7th Cir. 2001) (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992)). Further, to grant a preliminary injunction under the Prison Litigation Reform Act, 18 U.S.C. § 3626 (PLRA) a court must find that such relief is: (1) narrowly drawn; (2) extends no further than necessary to correct the violation of the Federal right; and (3) is the least intrusive means necessary to correct the violation of the Federal right. 18 U.S.C. § 3626(a)(1).

Leiser's request for a preliminary injunction fails because he has not submitted evidence suggesting that his claims are likely to succeed on the merits. As noted, Leiser has been granted leave to proceed on deliberate indifference and state law negligence claims. "Deliberate indifference" means that the officials are aware that the prisoner needs medical treatment, but are disregarding the risk by consciously failing to take reasonable measures. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). While Leiser submitted evidence that he has suffered a significant amount of pain in the past, he has failed to submit any evidence to suggest that any of the defendants either ignored or responded unreasonably to his complaints. Additionally, while Leiser did request to see a neurosurgeon on several occasions, he has not established that his *desire* to see a neurosurgeon amounts to an actual *need* to see a neurosurgeon that the

defendants understood but disregarded. In 2011, Leiser received a recommendation to see a neurologist or neurosurgeon (dkt. 1-6), and in 2013, a general surgeon opined that his problem could be neurological (dkt. 1-5), but these two recommendations do not establish that Dr. Hannula's conclusions–which were based on numerous consultations with Leiser over several years–constitute deliberate indifference.

To the contrary, Dr. Hannula actively and regularly treated Leiser. Although Dr. Hannula did not refer Leiser to a neurologist, she did address and treat his pain by recommending physical therapy, prescribing pain medication, and ordering an MRI to assess the severity of his disc disease. Dr. Hannula's affidavit suggests that she knew that Leiser wanted to see a neurosurgeon, but that she explained to him that seeing a neurosurgeon was not necessary and, in her professional view, it would not help. For instance, when Dr. Hannula met with Leiser on August 28, 2014 to discuss his back and testicle pain, she told him that surgery would not help his pain, but that a nerve block might.

At most, the evidence submitted by the parties establishes a disagreement about Leiser's treatment. This is insufficient to succeed on a deliberate indifference claim. *See Snipes v. DeTella,* 95 F.3d 586, 590-91 (7th Cir. 1996) ("Medical decisions that may be characterized as 'classic example[s] of matter[s] for medical judgment, such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview.") (internal citation omitted); *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir. 1987) ("mere disagreement as to the proper medical treatment [does not] support a claim of an eighth amendment violation").

Furthermore, even if I were to assume, *arguendo*, that the evidence supported a finding that the defendants' have been deliberately indifferent to Leiser's pain *in the past*, defendants point out that Leiser has not presented any evidence showing that he *currently* is in need of being examined by neurosurgeon.[1] It actually appears, based on Dr. Hannula's declaration and treatment notes, that Leiser has been doing quite well recently, and that he did not have complaints about back pain when they met as recently as April 25, 2016, just a few weeks before Leiser filed this motion. Leiser does not dispute the content of Dr. Hannula's treatment notes; he actually appears to ignore these facts altogether. In short, Leiser has failed to show that he needs the injunctive relief he seeks. Accordingly, his request for a preliminary injunction requiring the DOC to bring him to the UW-Madison hospital for a neurosurgeon consult must be denied.

---

[1] Defendants also argue that Leiser is seeking an neurosurgeon evaluation to buttress his claim in this lawsuit, based on his statement in his motion that the neurosurgeon will "prove that [he] should have been treated sooner, and that because of the long delay [he] suffers with a life time (permanent) injury." (Pl.'s Prelim Inj. Mot. ¶ 10.) They point out that the Seventh Circuit warns against permitting litigants to avoid litigation costs in this matter. *Ivey v. Harney*, 47 F.3d 181, 186 (7th Cir. 1995) (finding that the district court lacked authority to order a prisoner to have a medical examination performed outside the institution). In response, Leiser assures the court that he is seeking only medical treatment. (Dkt. 33, at 3.) Given the evidence suggesting that Leiser's health of late has improved, defendants' point is well-taken, but ultimately irrelevant given my finding that Leiser otherwise has failed to meet his burden of proof.

ORDER

IT IS ORDERED that Plaintiff Jeffrey Leiser's Motion for a Preliminary Injunction (dkt. 25) is DENIED.

Entered this 11th day of August, 2016

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge
