IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JEFFREY D. LEISER,

    Plaintiff,

v.

DR. JOAN HANNULA, et al.,

    Defendants.

OPINION & ORDER

15-cv-328-slc

---

On August 11, 2016, I denied *pro se* plaintiff Jeffrey Leiser's motion for a preliminary injunction. Plaintiff's claims in this case concern defendants' alleged failure to treat his spinal and testicle pain while he was housed at Stanley Correctional Institution. Leiser had requested an emergency order requiring the Wisconsin Department of Corrections to bring him to the University of Wisconsin-Madison hospital to be evaluated by a neurosurgeon. I denied his motion because Leiser had failed to show he was entitled to the relief he sought. (Dkt. 40.) Plaintiff has since filed a Motion for Reconsideration (dkt. 41), a Renewed Motion for Injunctive Relief (dkt. 54), and a Supplemental Renewed Motion for Injunctive Relief (dkt. 55). The Renewed Motion and Supplemental Renewed Motion ask the court to enter an order requiring Leiser to receive narcotics and/or Tramadol to control his pain. After reviewing the parties' submissions, I concluded that there are no material facts in dispute that would warrant a hearing. Leiser still has not submitted any evidence suggesting that he is entitled to the extraordinary relief he seeks. Therefore, I am denying his motions.

**Motion for Reconsideration (dkt. 41)**

Leiser filed his Motion for Reconsideration of my order denying his request to see a neurosurgeon on August 26, 2016.  In his subsequent filings, he stated that he had an appointment with a neurosurgeon on December 20, 2016.  (Dkt. 54, at 2-3.)  The records Leiser and the defendants submitted confirm that Leiser was seen by Dr. Jerry Davis, a neurosurgeon at Gunderson Health System, on December 20, 2016.  (Conlin Decl., Ex. A, dkt. 58-1, at 3.)  He recommended surgery, but told Leiser that he could not perform it until Leiser was able to achieve a body weight between 225 and 230 pounds.  (*Id.* at 3.)  As Leiser received the relief he was seeking in his initial motion for preliminary injunction, I will deny it as moot.

**Renewed Motion and Supplemental Motion (dkts. 54, 55)**

As was the case in his prior motion, the relief Leiser seeks is rarely granted.  "To obtain a preliminary injunction, the moving party must show that its case has 'some likelihood of success on the merits' and that it has 'no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied.'" *Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 678 (7th Cir. 2012) (quoting *Ezell v. City of Chi.*, 651 F.3d 684, 694 (7th Cir. 2011)).  To grant a preliminary injunction under the Prison Litigation Reform Act, 18 U.S.C. § 3626 (PLRA) a court must find that such relief is: (1) narrowly drawn; (2) extends no further than necessary to correct the violation of the Federal right; and (3) is the least intrusive means necessary to correct the violation of the Federal right.  18 U.S.C. § 3626(a)(1).

2

Leiser requests an order requiring the staff at the New Lisbon Correctional Institution ("NLCI") to provide narcotics or Tramadol because his current pain management regiment of Tylenol, ibuprofen, and icing is so insufficient that he cannot lose the weight necessary for him to undergo surgery. Leiser submitted records of his treatment at NLCI in support, but there are three reasons why nothing before me suggests that a preliminary injunction is appropriate.

*First,* Leiser's current request does not involve his claims against any of the named defendants. I granted Leiser leave to proceed against individuals that were involved in his care while he was housed at the Stanley Correctional Institution. Leiser has not sought leave to amend his complaint to name additional defendants and he explicitly stated that he does not want "to make the current NLCI HSU staff part of this civil suit" (dkt. 55, at 4). Given that the PLRA permits me to only order injunctions that are narrowly tailored to correct the constitutional violation in *this* lawsuit, his request is outside the perimeters of my authority.

*Second*, Leiser has an adequate remedy at law. If he believes that he has a § 1983 claim against the individuals that have treated him at NLCI, he may seek relief within the DOC's grievance system. Then, once he has exhausted his administrative remedies within the DOC, if he is still dissatisfied, he may file a separate lawsuit against the other defendants.

*Third,* even if Leiser's allegations implicated one of the defendants to this lawsuit, he has not submitted any evidence suggesting that his claims are likely to succeed on the merits. As noted, Leiser has been granted leave to proceed on deliberate indifference and state law negligence claims. "Deliberate indifference" means that the officials are aware that the prisoner needs medical treatment, but are disregarding the risk by consciously failing to take reasonable measures. *Forbes v. Edgar,* 112 F.3d 262, 266 (7th Cir. 1997).

The parties submitted Leiser's treatment records between November and December of 2016. While, Leiser has not authenticated the records he submitted, I have taken them into account for purposes of determining whether his motion had any merit to the point where a hearing would be necessary. Here is a summary of them:

- November 25, 2016: Leiser submitted a health services request ("HSR") form complaining of nerve pain and stating that ibuprofen and muscle rub does not help. The response note dated November 26, indicates that a nurse reviewed it and scheduled him to be seen by HSU.

- November 27, 2016: Leiser submitted another HSR requesting to be seen. The November 27 response note indicates that he was scheduled to be seen.

- November 30, 2016: Leiser submitted an HSR and letter to the HSU manager complaining of the same symptoms. A December 1 response note states that he was scheduled to be seen on December 1.

- December 1: Dr. Hoffman, a doctor at Gunderson Lutheran Hospital saw him, and he ordered an MRI and a neuron evaluation. Dr. Hoffman prescribed three weeks of Tramadol.

- December 7: Leiser submitted an HSR that he was in severe pain and that the medication he receives barely helps. The December 8 response note states that he was scheduled for an MRI and would not receive a medication change at that time.

- December 19: Leiser underwent an MRI.

- December 20: Leiser submitted an HSR complaining of pain and disagreeing with Dr. Hoffman's statement that Tramadol and narcotics are disfavored methods of treating chronic pain. The December 21 response note states that she had spoken with Dr. Hoffman, who stated he would not renew the Tramadol because it was a temporary three-week order and that Leiser can take Tylenol and ibuprofen as needed.

  Also on this date, Dr. Davis met with Leiser at Gunderson Lutheran Hospital. He told Leiser that he does need surgery but that he needed to lose weight before the surgery was feasible.

- December 21: Leiser submitted another HSR complaining Tylenol and ibuprofen do not help his severe pain and emphasizing that a doctor told him he needed surgery. Leiser received a response from Dr. Hoffman stating that "Tramadol and narcotics are increasingly being recognized as extremely poor drugs for chronic pain. We can try other options at our next scheduled visit."

- December 22: Leiser submitted another HSR complaining of the same pain and that Tylenol and ibuprofen were not helping. On December 23 a nurse responded that the neurosurgeon recommended weight loss so that he could undergo surgery, and ensured him that a doctor would come to see him about the pain.

- December 25: Leiser submitted another HSR request, asking for narcotics or Tramadol instead of Tylenol. The response note stated that he would not be receiving narcotic pain medication.

- December 26: Leiser submitted a request for refill of Tylenol and ibuprofen, and it was filled for the Tylenol.

(*See* dkts. 55-1, 59.)

While these records indicate that NLCI staff know that Leiser was in significant pain, they also suggests that NLCI staff and other medical professionals have been tending to Leiser's requests and that their treatment decisions have not been clearly unreasonable. Leiser filed numerous HSU requests, and NLCI staff responded within a day to each and every one of these requests, even if it was simply to let Leiser know that staff would not be changing his medication prescriptions. Staff repeatedly provided Leiser with ice, Tylenol, and ibuprofen to manage his pain. On one occasion Leiser did receive Tramadol, but only on a on a temporary basis because Dr. Hoffman explained that it was a "poor" drug for chronic pain. Further, staff responded directly to Leiser's repeated requests for narcotics by explaining to Leiser that it was not available because (1) narcotics had not been prescribed and (2) narcotics were not appropriate for his type of chronic pain management. None of these responses appear to be outside the bounds of appropriate treatment decisions.

5

The only issue that raised a question about whether Leiser needs immediate treatment in the form of narcotics or Tramadol is his claim in his briefing that Dr. Davis "said he would order" "medication" for him.  (Dkt. 55, at 1.)  It would be troubling if any admissible evidence suggested that Dr. Davis had prescribed it and that order was being ignored, but the record does support this scenario.  For one, Leiser does not explicitly state in his brief that Dr. Davis would prescribe him anything stronger than Tylenol or ibuprofen.  Nor has Leiser submitted an affidavit in which he swears that Dr. Davis made that statement to him.  In fact, the authenticated records from that visit do not suggest that Dr. Davis prescribed Tramadol or narcotics or directed staff at NLCI to provide such medication.  (*See* dkt. 59.)  Dr. Davis's notes do not address Leiser's medication at all, despite the fact that they include a list of his current medications and he made other recommendations.  (*Id.* at 4-5.)  Accordingly, nothing in the evidence before me suggests that NLCI staff or any other DOC employee has been either ignoring or responding inappropriately to Leiser's medical needs.

As I noted when I denied Leiser's initial preliminary injunction motion, the evidence establishes, at most, a disagreement about Leiser's treatment.  This is insufficient to succeed on a deliberate indifference claim.  *See Snipes v. DeTella,* 95 F.3d 586, 590-91 (7th Cir. 1996) ("Medical decisions that may be characterized as 'classic example[s] of matter[s] for medical judgment, such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview.") (internal citation omitted); *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir. 1987) ("mere disagreement as to the proper medical treatment [does not] support a claim of an eighth amendment violation").  While Leiser may vehemently disagree with the professionals that have been providing his care, he has failed to

submit any evidence that either support his position or that establish that he is entitled to immediate relief. For that and the other two reasons set forth above, I am denying his motions.

ORDER

IT IS ORDERED that Plaintiff Jeffrey Leiser's Motion for a Reconsideration (dkt.41), Renewed Motion for Injunctive Relief (dkt. 54) and Supplemental Renewed Motion for Injunctive Relief (dkt. 55) are DENIED.

Entered this 27th day of February, 2017.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge