IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JEFFREY D. LEISER,

    Plaintiff,

v.

DR. JOAN HANNULA, et al.,

    Defendants.

OPINION & ORDER

15-cv-328-slc

---

*Pro se* plaintiff Jeffrey Leiser is proceeding in this civil action against individuals that were involved in his medical care while he was housed at the Stanley Correctional Institution (Stanley). On September 14, 2017, I issued an opinion and order granting in part and denying in part defendants' motion for summary judgment and staying this matter while the court attempted to recruit counsel for Leiser. (Dkt. 129.) Here are the claims remaining for trial:

- Eighth Amendment deliberate indifference and Wisconsin medical malpractice/ negligence claims against defendant Dr. Joan Hannula, related to her: (1) June 14, 2011 failure to renew Leiser's prescriptions for cyclobenzaprine, Vicodin and baclofen (dkt. 129 at 32); and (2) June 24, 2014, decision to switch his depression medication (*id.* at 34-35).

- Wisconsin negligence claim against defendant Nurse Practitioner Judy Bentley, related to her September 30, 2013, decision to cancel her previous request that Leiser undergo an MRI because Leiser reported improvement. (*Id.* at 36-37.)

- Deliberate indifference and negligence claims against Nurse Patty Hazuga, related to a July 19, 2014, incident when she allegedly sent him away from the HSU even though he complained of chest pains. (*Id.* at 38-39.)

- A deliberate indifference claim against defendant Nurse Tracy Brunner, related to a July 23, 2014, incident when Leiser reported withdrawal symptoms (back pain and sweating), and Brunner did not see him that day.

- A deliberate indifference claim against defendant Nurse Tricia Thacker, related to her April 29, 2013, delay in allowing Leiser to go the HSU for severe testicle pain.

A month after issuing that opinion and order, defendants filed a motion for reconsideration (dkt. 130), and Leiser responded with a motion asking that I deny defendants' motion (dkt. 132). For the next two years, the court unsuccessfully attempted to recruit counsel for Leiser. On July 17, 2019, Leiser requested a status update, which I addressed in a July 26, 2019, telephonic scheduling conference in another of Leiser's lawsuits before the court. I discussed this court's unsuccessful efforts to recruit counsel for him, explaining that Leiser would need to decide whether to try this case *pro se* or dismiss his remaining claims without prejudice. On July 26, 2019, I issued a text only order memorializing that conversation, and informing Leiser that if by the end of December 2019 he had not notified the court of his decision, the court would dismiss his remaining claims without prejudice. (Dkt. 143.) In December 4, 2019, Leiser filed a motion for appointment of an expert witness pursuant to Federal Rule of Evidence 706. Construing this motion as Leiser's notification that he intends to proceed *pro se*, I will reopen this matter. Having reviewed the claims remaining, and the parties' motions, I am making the following rulings: (1) I will dismiss Leiser's state-law claim against defendant Bentley without prejudice; (2) I will deny defendants' motion for reconsideration; and (3) I will deny without prejudice Leiser's motion for appointment of an expert.

**Dismissal of Defendant Bentley**

Since I granted summary judgment in Bentley's favor on Leiser's deliberate indifference claim against her, I will decline to exercise jurisdiction over Leiser's Wisconsin negligence claim against her and dismiss that claim without prejudice. The general rule is that federal courts should relinquish jurisdiction over state law claims if all federal claims are resolved before trial. 28 U.S.C. § 1367(c)(3); *Burritt v. Ditlefson*, 807 F.3d 239, 252 (7th Cir. 2015); *see also Groce v. Eli Lilly & Co.*, 193 F.3d 496, 499-501 (7th Cir. 1999) ("[I]t is well established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."). An exception to this general rule arises in circumstances in which a state law claim might be time barred. *See Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007). That exception does not apply here.

The statute of limitations for Leiser's Wisconsin negligence claim against Bentley is three years. *See* Wis. Stat. § 893.55 (medical malpractice), § 893.54 (injury to the person). The earliest date that Leiser's claim against Bentley accrued would be the day she cancelled the MRI, September 30, 2013. Leiser filed this lawsuit over two years later, on May 29, 2015, which would toll the running of that limitations period from that point until the "final disposition" of his claim in this court. Wis. Stat. § 893.15; *see also Artis v. District of Columbia*, 138 S. Ct. 594, 598, 199 L.E.2d 473 (2018) (bringing state law claims in federal court stops the clock on the statute of limitations for those claims). Accordingly, since Leiser still has time to pursue this claim in state court, I will dismiss it without

3

prejudice.

**Motion for Reconsideration (dkt. 130)**

Defendants seek reconsideration of the summary judgment opinion denying their request for judgment on Leiser's Wisconsin negligence claims against defendants Bentley, Hannula and Hazuga. In support, defendants argue that in Wisconsin, the exclusive remedy for medical malpractice claims is Wis. Stat. Ch. 655, and thus Leiser cannot proceed against them on a theory of state law negligence. Defendants also argue that Leiser cannot proceed against Hazuga, a nurse, on any medical malpractice claims because Wisconsin law does not recognize medical malpractice claims against nurses.[1]

Defendants' arguments are drawn from a decision issued in a 2017 case in this district court, *Lawrence Northern v. Koreen Frisk*, No. 13-cv-367-jdp, dkt. 107 (W.D. Wis. June 14, 2017). Judge Peterson granted a state-employed nurse's motion to dismiss a medical malpractice claim because she was not a "health care provider" subject to suit under Wis. Stat. Ch. 655. *Id.* However, that decision was limited to the arguments the parties raised in defendant's motion to dismiss, and Judge Peterson has since elaborated on the availability of common law negligence claims against state-employed nurses in greater detail, finding that Wisconsin's medical malpractice statute generally does not apply to state-employees, *see* Wis. Stat. § 655.003, and Wisconsin law supports a common

---

[1] Defendants also raise a similar argument related to Bentley, which I need not resolve since I'm dismissing this claim without prejudice.

4

law negligence claim against state-employed nurses. *Smith v. Hentz*, No. 15-cv-633-jdp, 2018 WL 1400954, at *4 (W.D. Wis. Mar. 19, 2018) (concluding that state-employed nurses may not be subject to Wis. Stat. Ch. 655, but may be sued on a theory of common law negligence). Judge Conley also has taken this approach, *Carter v. Griggs*, No. 16-cv-252-wmc, 2018 WL 1902885, at *7 (W.D. Wis. Apr. 20, 2018) (accepting that common law negligence claims against state-employed nurses appears cognizable), as have multiple judges in the Eastern District of Wisconsin, *Killiam v. Nicholson*, No. 17-c-895, 2018 WL 1902587, at *3 (E.D. Wis. Apr. 20, 2018) (same); *Ravenwood-Alexander v. Beahm*, No. 17-cv-7-pp, 2018 WL 4188472, at *9 (E.D. Wis. Aug. 31, 2018) (same).

Hazuga and Brunner were state-employed nurses during the relevant time period, and defendants have not submitted any supplemental authority suggesting that these more recent decisions are incorrect or distinguishable. I agree with the more recent analysis of the cognizability of common law negligence claims against state-employed nurse practitioners and nurses. Additionally, while defendants seek reconsideration with respect to the common law negligence claim against Hannula, I will not dismiss this claim. Hannula, like nurses Hazuga and Brunner, was employed by the State of Wisconsin during the relevant time period, so it would appear that Wis. Stat. Ch. 655 does not apply to Leiser's claims against her, *see* Wis. Stat. § 655.003, meaning that a common law negligence claim against Hannula is available as well. Accordingly, I am denying this motion, and I will deny Leiser's related motion as unnecessary.

5

**Motion for an Expert**

Leiser asks that I appoint a neutral expert in this case pursuant to Federal Rule of Evidence 706, which allows a court to appoint a neutral expert when doing so is necessary to help the court or the jury "interpret complex information." *DeJesus v. Godinez*, 720 F. App'x 766, 772 (7th Cir. 2017). I am denying this motion without prejudice.

As a threshold matter, I am not convinced that Leiser appreciates what recruiting an expert at this point entails. Leiser asks that the court charge the cost of recruiting a neutral expert to the defendants, but that option is not available. There are no federal funds available for experts in civil cases, so Rule 706(c) allows the court to apportion the costs between the parties. *See Goodvine v. Ankarlo,* No. 12-cv-134-wmc, 2013 WL 1192397, at *2 (W.D. Wis. Mar. 22, 2013) (requiring pro se prisoner to pay a portion of the costs based on the amount in his trust fund account). Instead, if the court were to appoint a neutral expert, it would tax Leiser a certain percentage of the cost of an expert based on the amount of money Leiser has in his prison trust fund account. I do not know Leiser's current financial situation, but given that he is proceedings *in forma pauperis* in his other lawsuit currently before me, I infer that he is indigent and may not want to devote his limited resources to paying for a court-appointed expert.

Even assuming Leiser might be willing to pay his share of the cost of a neutral expert, it is very difficult to find expert witnesses willing and able to provide assistance. Because I cannot predict how long it will take to recruit an expert who is willing to provide a report and make herself or himself available for testimony at trial, we will not even be

able to set this matter for a trial schedule. Given that this case has been stayed for over two years, and Leiser now seems interested in getting this case on track, I don't anticipate that he actually wants to keep waiting for this case to go to trial.

Even assuming Leiser is willing to pay his share and wait longer, I still am not persuaded that a court-recruited expert is necessary. The court appoints expert witnesses only in circumstances in which the court needs an expert to help resolve disputed issues. Here, the majority of the disputed issues are factual. In particular, Leiser claims that Hazuga, Brunner, and Thacker either refused to provide him care, or delayed providing him care. Leiser's proof of these claims will hinge on evidence about what happened during his interactions with these individuals and how their alleged failure to act caused him to suffer needlessly or worsened his conditions.

More specifically, to prove his deliberate indifference claims against them, Leiser will need to submit evidence that their actions constituted "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on ... [accepted professional] judgment." *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013) (citation and internal quotation mark omitted). As for his Wisconsin negligence claims against Hazuga and Brunner, he will have to submit evidence that they breached their duty of care, which caused him injury. Wisconsin law does not require expert testimony "where the matters in issue fall within the area of common knowledge and lay comprehension." *Olfe v. Gordon*, 93 Wis.2d 173, 286 N.W.2d 573, 576 (1980); *Gil v. Reed*, 381 F.3d 649, 659 (7th

Cir. 2004) ("In the medical malpractice setting, Wisconsin requires expert testimony to establish medical negligence except in situations where the errors were of such a nature that a layperson could conclude from common experience that such mistakes do not happen if the physician had exercised proper skill and care.") (citing *Christianson v. Downs*, 90 Wis.2d 332, 279 N.W.2d 918, 921 (1979)).

Lay people not trained in medical care still would understand that a complete failure to provide medical care to a prisoner who reported symptoms is problematic. Therefore, I am not convinced that Leiser needs expert testimony to prove his claims. Instead, Leiser should be able to submit his own testimony about his symptoms, any medical records memorializing the events of those days, and he may be able to cross-examine Hazuga, Brunner, and Thacker about why they refused to treat him or delayed his care.

As for Dr. Hannula, Leiser is proceeding to trial against with respect to just *two* treatment decisions: her June 14, 2011, failure to renew Leiser's prescriptions for cyclobenzaprine, Vicodin and baclofen, and her June 24, 2014, decision to change his depression medication, stopping his citalopram and starting him on duloxetine, without weaning him from citalopram. While Leiser will be able to submit his own testimony related to the adverse effects of these decisions, these two decisions arguably are more complicated because evaluating Dr. Hannula's decisions may require some understanding about the potential for withdrawal symptoms and side-effects of certain medications. This type of information isn't necessarily obvious to lay jurors. Still, I'm not persuaded

8

that the court needs to appoint a neutral expert to opine about Dr. Hannula's decisions because Leiser has other options available to him to offer expert medical testimony.

Leiser can seek to introduce such evidence through the doctors who treated him subsequently at other DOC facilities, or he may seek to subpoena other health care providers who were working at Stanley during the relevant time period. For instance, Bentley is a nurse practitioner and it appears she could testify about the standard practices related to terminating medications and opine about Dr. Hannula's 2011 prescription decision. Additionally, Leiser is free to call Dr. Hannula adversely and elicit such testimony from her, and he may even be able to confront her with statements from learned treatises recognized in the field related the adverse impact of terminating baclofen without titration, and abruptly changing his depression medication. *See* Fed. R. Evid. 803(18). Should Leiser take this approach, the court would make reasonable efforts to help him serve subpoenas and, possibly, provide him assistance in obtaining a relevant medical treatise. I expect defense counsel would make similar efforts and enter into reasonable stipulations with respect to admitting evidence. While Leiser may not consider these potential alternatives ideal, neither is it ideal to appoint a neutral expert: there is no guarantee Leiser would obtain favorable answers from any expert the court appointed.

For all of these reasons, I'm denying Leiser's request to recruit an expert at this point, subject to renewal should the alternative options outlined above prove unworkable. Therefore, I will set this matter for a telephonic scheduling conference.

ORDER

IT IS ORDERED that:

1. This case is REOPENED.

2. Plaintiff Jeffrey Leiser's motion for appointment of expert (dkt. 144) is DENIED, without prejudice.

3. Defendants' motion for reconsideration (dkt. 130) is DENIED.

4. Plaintiff's motion in opposition to defendants' motion for reconsideration (dkt. 132) is DENIED as unnecessary.

5. This matter is set for a telephonic scheduling conference on March 25, 2020, at 2:30 p.m. Defense counsel is responsible for initiating the call to the court at (608) 264-5153.

Entered this 28th day of February, 2020.

BY THE COURT:
/s/
STEPHEN L. CROCKER
Magistrate Judge